## BERRYMAN v. MANKER.

1. **Promissory Note:** SURETY: DISCHARGE OF. Where, after a note has been signed by the principal maker and a surety, and delivered to the payee, it is signed by others as sureties, without the knowledge and consent of the one first signing, he is thereby discharged from liability thereon.

2. ——: ——: ——. The fact that the additional sureties signed the note in pursuance of an agreement between the principal and the payee, made at the time the note was delivered, will not prevent the discharge of the first surety.

*Appeal from Montgomery Circuit Court.*

TUESDAY, JUNE 7.

THE petition states the plaintiff, defendant, and Peterson were sureties for one Irons, on a promissory note. That the plaintiff and Peterson were compelled to and paid a portion of the amount due on said note. This action was brought to recover of defendant his contributive share.

The defendant pleaded the note had been altered after he had signed it, and it had been delivered to the payee, without his knowledge, whereby he was discharged from all liability thereon, and that after the note had been delivered to the payee he, for a valuable consideration, had been released from all liability and that plaintiff had represented to him the agreement for defendant's release had been carried out, and that he was no longer surety on said note; that defendant relied thereon, and afterward Irons became insolvent.

There was a trial by jury, verdict and judgment for defendant, and plaintiff appeals.

*Miller & Bartholomew*, for appellant.

*C. E. Richards*, for appellee.

SEEVERS, J.—I. The evidence tended to show the note was signed by Irons and the defendant, and sometime there-

1. PROMISSORY note : surety : discharge of.

after by the plaintiff and Peterson. Whether it was signed by the latter parties before its delivery to the payee, was a controverted question.

The Court instructed the jury as follows:

"7th. If the jury find from the evidence that the note mentioned in plaintiff's petition was executed by Irons as prin-cipal and defendant as surety, and was delivered to the payee, Boots, and you further find that after the delivery of said note to said payee the plaintiff and one Peterson signed it as addi-tional sureties without the knowledge and consent of defend-ant, such signing after the execution and delivery would amount to a material alteration, and you should find for the defendant."

It is insisted by counsel there was no evidence tending to show the note had been delivered to the payee after it had been signed by Irons and defendant and before it was signed by plaintiff and Peterson.

An examination of the abstract satisfies us this is a mis-take. The evidence of several witnesses so tended. With the question whether there was a preponderance of the evidence in favor of the defendant, as to the point above stated, we have nothing to do.

The legal thought of the instruction is that where a prom-issory note is fully executed by the principal and surety, de-livered to the payee, and thereafter, without the knowledge of the surety, the name of another person is added thereto as an additional surety, the first surety is discharged; and it has been so held by this court in *Dickerman v. Miner*, 43 Iowa, 508, and *Hamilton v. Hooper et al.*, 46 Id., 515.

It is insisted there was no evidence tending to show the payee knew the signatures were added without the knowledge of the defendant. In this counsel are mistaken; more than one witness, besides the defendant, gave evidence so tending.

II.  The tenth instruction given by the court is as follows:

"10th.  Or should you find that there was a general under-standing that the note should be signed by the principal, Irons, and the three sureties, and that defendant signed it first, and afterwards at any time before delivery the plaintiff and Peter-son signed said note as additional sureties, the defendant would be bound thereby, in the absence of any fraud, that is unless he was deceived by such additional sureties and the other parties to the note as to the existence of the note and his outstanding liability thereon."

The first part of the instruction is exceedingly favorable to the plaintiff, and was clearly given in his interest. No just exception can be taken thereto by him.

This cannot be said of the latter part of the instruction. In relation thereto, we desire to say there was evidence tend-ing to show the defendant made efforts to and had some rea-son to believe he had been released from all liability on the note.  The latter part of the instruction is based on this evi-dence, and we have no doubt the correct rule is stated in the instruction, if there was evidence to justify it.  The close point is, whether there was evidence tending to show the de-fendant was deceived by the "additional sureties."  The evi-dence on this point is somewhat meager, but the defendant testified "the plaintiff gave me to understand that I was off the note.  This is not denied by the plaintiff, and there are other slight circumstances so tending, so that with some doubt we think there was evidence upon which the instruction could be properly based.  Its sufficiency was for the jury.

As the qualification of the first instruction asked by the defendant was in substance the same as the latter part of the tenth instruction given, it follows from what has been said there was no error in qualifying it as was done.

The second instruction asked was properly refused, because it assumes the payee of the note at the time it was delivered could agree with the principal maker, without the knowledge of the defendant, that other par-

ties were to sign it, and that the defendant would be bound thereby. The defendant could only be bound by his consent or knowledge that it was to be signed by other parties.

Counsel for the appellant have, to a considerable extent, discussed the sufficiency of the evidence to establish the propositions upon which the verdict must be necessarily based. But as no such error is assigned, we cannot consider the same.

AFFIRMED.